ISAAC E. ANGLE, PLAINTIFF IN ERROR, V. JOHN S. BILBY, DEFENDANT IN ERROR.

1. Trial: EVIDENCE. A conversation had after the commencement of the action, but before court, between the attorney for the plaintiff and a man who was afterwards subpœnaed and called by defendant as a witness, as to the probable result of the suit and the line of prosecution which, in the opinion of the attorney, would insure success on the part of the plaintiff, *Held*, Inadmissible in evidence on the part of the defendant.

2. ———: ARGUMENT OF ATTORNEY. Certain remarks of counsel for the plaintiff in his closing argument to the jury were objected to by counsel for the defendant, and the objection overruled by the court. *Held*, That although there was departure from the rules of propriety and legitimate debate by counsel for the plaintiff, which should not have been approved by the trial court, yet, as such line of argument does not appear to have been continued or persisted in after objection, the overruling of the objection is not deemed reversible error.

3. ———: CONFLICTING EVIDENCE. There was a conflict of evidence as to the ownership of a part of the property replevied, two witnesses testifying to one state of facts, and one witness testifying to another and different state of facts. *Held*, That the question raised by this conflicting evidence was for the jury, and not for the court of review.

4. The Instructions given and refused examined, and *Held*, Correctly given and refused.

ERROR to the district court for Johnson county. Tried below before BROADY, J.

*S. P. Davidson*, for plaintiff in error, cited: *Victor Sewing Machine Co. v. Day*, 13 Neb., 408. *Kuhns v. Bankes*, 15 Neb., 92. *Price v. McComas*, 21 Neb., 195–198.

*R. W. Sabin* and *L. C. Chapman*, for defendant in error, cited: *Wiley v. Shars*, 21 Neb., 712.

COBB, J.

This is a suit in replevin brought in the district court for Johnson county by said Bilby against said Angle, to recover possession of two brown mares, three and four years old; one gray mare, three years old; one dark, dun mare, eight years old; and twenty-two head of cattle, and two gray mares, two years old. Said Bilby, in his petition, alleges that he, at the commencement of the suit, was the owner of the four mares first above mentioned, and that he had a special ownership in the cattle and the two other gray mares, under and by virtue of a chattel mortgage dated March 18, 1885. He further alleges that said Angle claimed to hold said property under and by virtue of a chattel mortgage given him by Hughes Brothers.

Said Angle, in his answer, denies each and every allegation in the petition, except that he held the property under and by virtue of a chattel mortgage given by Hughes Brothers to him. He further alleges that said mortgages given to him were given to secure a valid indebtedness of $740.56, due him at the time he took possession of said property, and his said mortgages then constituted valid and subsisting liens thereon, and that he has been damaged herein in the sum of $800.

The reply denies all the allegations of the answer.

Trial was had, and a verdict and judgment were entered for said Bilby, and said Angle now prosecutes this petition in error to reverse said judgment.

The plaintiff in error assigns nineteen separate grounds of error, but as but few of them are presented and argued in his brief, it is not deemed necessary to set them out at length. Those argued will be considered in their order.

The first point argued by counsel for plaintiff in the brief is that arising upon the alleged error of the court in excluding from the jury the testimony of the witness Lit-

tlejohn as to his conversation with the attorney for Bilby. This witness had been called and examined by the defendant, and had testified as to his residence in Gage county, near by to the farm of the Hughes Brothers, mentioned by other witnesses; that he was acquainted with the manner of the Hughes Brothers' doing business on their farm, of their buying cattle and placing them on their farm, etc. Counsel for defendant asked:

Q. Had you a conversation with Mr. Sabin, the plaintiff's attorney?

(Objection made by plaintiff's counsel, and overruled.)

A. After this suit was commenced I had.

Q. Tell the jury what that conversation was?

(Objection made by plaintiff's counsel, and overruled.)

A. I don't see that it has any connection with this case.

Q. By the court: Was that conversation about this lawsuit?

A. Yes, sir.

Q. By counsel: Go on and state what the conversation was?

A. It was in regard to Mr. Angle and his money. Mr. Sabin remarked that, " It was easy enough to beat them; all that was necessary was to keep the Hughes boys out of the way.'

(Motion by plaintiff's counsel to strike out the answer, as incompetent and irrelevant, taken under advisement.)

Q. In that conversation were you talking about this same controversy involved in this suit?

(Objection made by plaintiff's counsel, and no answer.)

Q. State what the conversation originally grew out of —about what suit, if any?

(Objection by plaintiff's counsel, sustained by the court.)

Q. State what was said in the conversation by Mr. Sabin?

A. There was considerable said, but the gist of it was that Mr. Angle deserved to be beat, any way; that he had

been robbing the boys, and all such as that; Sabin said, "We will beat him, Dave, or skin him," and such expressions.

Q. By what means?

A. He said all that was necessary was to keep the Hughes boys out of the way.

Q. Did he say anything about the Hughes boys' testimony being important?

A. I don't believe he did; he led me to believe from his conversation—

(Objection of plaintiff's counsel, sustained by the court.)

Q. Do you remember anything about hogs being sold and hauled away from the place?

(Objection of plaintiff's counsel, sustained by the court.)

This witness was cross-examined at considerable length, in which he reiterated his statements, when plaintiff moved to strike out all that had been said by the witness in regard to the conversation had with the attorney for the plaintiff, as incompetent and irrelevant, which was sustained by the court.

The only error which the court committed in respect to this testimony was in admitting it at all; and as it was drawn out by counsel for defendant, no objection can be heard from him in that respect. The witness was not offered by the plaintiff, nor did his counsel, at the time of the conversation, have any knowledge or expectation, as appears, that he would be called by the defendant, so that any conversation had between them, at the time, was entirely disconnected with this case, and no such conversation could bind or prejudice the plaintiff.

It appears from the bill of exceptions that, in the closing argument to the jury, the attorney for the plaintiff used the following language: "Mr. Angle's actions, gentlemen of the jury, will bear this construction, that if his claim was fixed up and secured that he would not follow Mose; that he would not send him to the penitentiary if he got him. As soon as he got his debt secured, over in

Ohio, a revelation comes to him all at once; that is, he finds out where Moses Hughes is. The old lady tells him. After he got the mortgage all fixed up, usurious interest and all, and drew the last drop of blood there was in the old lady, then he concluded that he did not want to prosecute Mose. I say, now, at this stage of the action, that his action bears such a construction!" Defendant objects to such a statement being made in the closing argument, in the absence of any testimony on the subject to that effect. Objection was overruled.

This ruling of the court constitutes the *second* point of the brief of counsel for plaintiff in error. These remarks of counsel do not appear to have been based upon any evidence in the case. It is impossible to say, therefore, what effect, if any, they could have had on the minds of the jury. The objection of counsel for defendant was not made to this line of argument until the counsel making it seems to have closed, and while the court overruled the objection to it, nothing followed the ruling of the court, except it be the presumption that the court may have justified the line of · argument objected to. While, in this view, this court cannot approve the ruling of the district court, yet it does not appear that the departure of counsel from strict propriety of address and argument was sufficiently gross as to warrant a reversal of the judgment for that cause alone.

The *third* point presented is that of property in the gray mare and the dun mare. The evidence shows that they were brought on the farm by the Hughes Brothers after the execution of the Bilby mortgage, and so could not then have been included in it. Counsel calls attention to the fact that both of the Hughes testify that, at the time these four mares were mortgaged to Angle, neither Wisherd nor Bilby owned or held any interest in them whatever. And to the further fact that the only witness who contradicts the Hughes, in this particular, is John A. Wisherd, whose want of candor, the counsel says, is evident from his cross-

examination, and that, therefore, so far as the mares are concerned, the verdict and judgment are contrary to the overwhelming weight of the evidence. It is true that in this respect there is the evidence of two witnesses against one, and no doubt it is usually the case that, when there is, clearly, a conflict of testimony upon a given point, a trial court ordinarily will adopt that view which is supported by two witnesses, rather than that of one. But I am not aware that this rule governs a court of review, and while the above is doubtless the general rule, the exceptions to it are frequent. As I understand the law to be, when the trial court, or a jury, under proper instructions, has found a given state of facts, a court of error or review will only enquire whether such trial court or jury had before it evidence to sustain such finding. And it rarely, if ever, happens that the number of witnesses for or against the facts found will control the decision on that point. The inquiry is not as to the weight of testimony on the one side, or the other, but was there sufficient evidence of the facts found to sustain the findings. This much must be conceded to the trial court.

The *fourth* point urged by counsel is the refusal of the court to give the following instruction, as asked by the defendant at the trial: "If the jury believe from the evidence that, after plaintiff's mortgage was given, Hughes Brothers and Wisherd sold cattle and other stock out of the same herds or droves as those covered by the plaintiff's mortgage, and bought other cattle of the same age and quality of those mentioned in defendant Angle's mortgage, prior to its date, and put them in the same herds and droves, and that afterwards defendant Angle's mortgages were given, and you believe from the evidence that the amounts secured thereby are still justly due, then you will find for defendant Angle as to such cattle covered by his mortgages, if you further believe from the evidence that the debt secured by the said Angle mortgages was either a firm

debt of the firm of Wisherd & Hughes Bros., or that said
Hughes Brothers or Moses Hughes had authority from
his or their partners to make said mortgages, even if you
further believe that said cattle belonged to Wisherd &
Hughes Bros."

To this point the counsel argues that, as the plaintiff
claims that his mortgage included all the cattle on the farm
when it was given, and relies upon this fact to help out the
indefinite description of the cattle contained in his mort-
gage, and that unless helped out in this way his mortgage,
so far as the cattle are concerned, is void for indefiniteness
of description; and there being testimony to show that
after defendant's in error mortgage was given, Wisherd and
the Hughes sold out of their herd a large number of cattle,
and bought and put into the herd 122 head of 3 and 4-
year-old steers, and 21 head of calves and young cattle,
and witnesses having testified that the cattle mortgaged to
the plaintiff in error, and involved in this suit, were either
raised or bought after the date of the Bilby mortgage; and
if that testimony is true, it should have been submitted
to the jury by the proper instruction, that the instruction
presented correctly submitted the same, and it was therefore
error to have refused it. The position and argument of
counsel appear to be correct to a certain extent. Defendant
had the right that the jury should be instructed that the
Bilby mortgage only covered such stock as were on the
farm in question at the time the mortgage was given, and
their natural increase; but this instruction had already been
given to the jury by the court on its own motion, in para-
graph 2, relative to the cattle, as follows:

"The plaintiff, in his evidence, claims the cattle and two
of the mares, one bay and one gray, by virtue of his alleged
chattel mortgage which was admitted in evidence. If the
jury find that, at the commencement of this action, the
plaintiff had a mortgage on which there was an indebtedness
due and unpaid, and that the mortgage covered all the stock

on a certain farm in Gage county, where the mortgaged property was situated at the time the mortgage was made, and that the cattle replevied herein were on that farm at the time of making plaintiff's mortgage, or were the increase of cattle on that farm at the time of the making of the plaintiff's mortgage, then you must find for the plaintiff as to the cattle involved in this suit."

Substantially all that is contained in the instruction refused is found in that given by the court, and it has been often held by this court that, after a jury had been instructed properly and fully as to a point in controversy, that it is not error to refuse other instructions as to the same point. Upon the whole of the questions and issues there seems to have been a fair trial, and the verdict and judgment are sustained by the evidence.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.